# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### Assigned On Brief January 7, 2008

## FEDERAL NATIONAL MORTGAGE ASSOCIATION v. GLENNA ROBILIO

**Direct Appeal from the Circuit Court for Shelby County**
**No. CT-000814-07     Jerry Stokes, Judge**

---

**No. W2007-01758-COA-R3-CV - Filed June 24, 2008**

---

From a trial de novo of an unlawful detainer action in circuit court, the defendant homeowner appeals, *pro se*, an award of summary judgment in favor of the purchaser at foreclosure. In a filing entered in general sessions – and considered by the circuit court – the defendant homeowner raised the defense of wrongful foreclosure, alleging the lender had failed to notify her of the default, of her opportunity to cure the default, and of the foreclosure sale itself.  The plaintiff purchaser failed to address these points on motion for summary judgment, thus leaving open this factual question. Finding that there was a genuine issue of material fact bearing directly upon the plaintiff purchaser's right to immediate possession of the property, we reverse the award of summary judgment  and remand the matter.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed; and Remanded**

DAVID R. FARMER, J., delivered the opinion of the court, in which ALAN E. HIGHERS, P.J., W.S., and HOLLY M. KIRBY, J., joined.

Glenna Robilio*, Pro se.*

Harris P. Quinn, Memphis, Tennessee, for the appellee, Federal National Mortgage Association.

### OPINION

Glenna Robilio (Ms. Robilio), proceeding *pro se*, appeals the trial court's award of summary judgment to Federal National Mortgage Association (FNMA) in this unlawful detainer action. FNMA purchased Ms. Robilio's residence at a foreclosure sale on October 27, 2006, and instituted this action because Ms. Robilio refused to surrender possession of it.  On appeal, Ms. Robilio argues that summary judgment was improper because NetBank f/k/a RBMG, Inc. ("NetBank"), the institution invoking the power of sale and conducting the foreclosure, never provided the required notice of default, of her opportunity to cure, or of the foreclosure sale.  She contends the sale was void for this reason and urges this Court to reverse the trial court's judgment.

*Bankruptcy Proceedings and Foreclosure Sale*

NetBank held the note and deed of trust on Ms. Robilio's residence and, as a result of Ms. Robilio's alleged default on the note, scheduled a foreclosure sale of the property for March 3, 2006. On February 28, 2006, Ms. Robilio filed for bankruptcy under Chapter 13 of the bankruptcy code and additionally sought injunctive relief and an automatic stay in order to prevent the foreclosure sale from proceeding as planned.[1] The United States Bankruptcy Court for the Western District of Tennessee imposed an automatic stay on the foreclosure sale and, according to FNMA, supplemented its order on April 3, 2006, to clarify that NetBank could continue the foreclosure sale "from time to time by announcement at the foreclosure sale." We note that the record does not contain this order.

Following NetBank's objection to confirmation of the Chapter 13 plan, the bankruptcy court entered an agreed order (dated August 25, 2006) resolving the objection. That order provided, in pertinent part, as follows:

> 1. If NetBank fails to receive its July and August ongoing mortgage payments from the Trustee in the Trustee's August disbursement or if NetBank fails to receive a monthly ongoing mortgage payment from the Trustee in any month beginning September 2006, then the automatic stay shall be terminated as to NetBank, the subject Property and the proceeds thereof without further notice, hearing, order or ten (10) day stay notwithstanding any future modification of the Plan in which event Debtor shall voluntarily surrender the subject Property to NetBank.

> 2. If NetBank fails to receive a payment on its mortgage arrearage claim from the Trustee in any month beginning August 2006, then NetBank may give written notice to Debtor and Debtor's attorney that Debtor is in default under this Agreed Order and that Debtor needs to cure the default (the "Notice Period"). For purposes of this agreed Order, the term "cure the default" shall mean that Debtor shall tender sufficient good funds to the Chapter 13 Trustee to enable the Trustee to make the defaulted payment to NetBank, along with any subsequent monthly arrearage payment due to NetBank under the Plan, in the next disbursement following expiration of the Notice Period. If Debtor fails to timely cure the default after written notice, then the automatic stay shall be immediately terminated as to NetBank, the subject property and the proceeds thereof without further notice, hearing, order, or ten (10) day stay notwithstanding any future modification of the Plan in which event Debtor shall voluntarily surrender the subject Property to NetBank.

---

[1] FNMA asserts on appeal that "Defendant/Appellant had notice of the scheduled foreclosure sale because Defendant/Appellant filed a Chapter 13 bankruptcy case [and attempted to enjoin the sale before it happened]." Even so, these facts do not establish NetBank's compliance with the terms of the deed of trust in foreclosing on the property.

3.    This shall be Debtor's last opportunity to satisfy her obligations to NetBank and to retain the Property.  Should Debtor's case be dismissed and Debtor refile, this Agreed Order shall constitute sufficient cause for NetBank to seek and obtain ex parte relief from the automatic stay in any subsequent case filed by the Debtor.  Should Debtor's case be converted to Chapter 7, then the automatic stay shall be terminated . . . as to NetBank, the subject Property and the proceeds thereof without further notice, hearing, order or ten (10) day stay, in which event debtor shall voluntarily surrender possession of the subject Property to NetBank.

Then, on October 25, 2006, the bankruptcy court entered an order dismissing Ms. Robilio's Chapter 13 case for failure to make plan payments.[2]  Two days later, on October 27, 2006, FNMA acquired the property at the foreclosure sale by crediting $178,206.55 against the note.  The successor trustee's deed was recorded in the Shelby County Register's Office on November 6, 2006.  Seeking relief from the dismissal of her case in bankruptcy court, Ms. Robilio filed a notice of appeal and a motion to impose a stay.  On November 22, 2006, the bankruptcy court entered an order granting the stay (pending appeal) as to all creditors except NetBank.  Eight days later, Ms. Robilio filed a notice of appeal as to the stay order.  Following FNMA's filing of the Forcible Entry and Detainer (FED) Warrant, Ms. Robilio filed an emergency motion for stay pending appeal with the Sixth Circuit Bankruptcy Appellate Panel, but it denied that motion on February 20, 2007.

### *The Unlawful Detainer Action*

On January 3, 2007, FNMA filed an FED Warrant against Ms. Robilio in the General Sessions Court of Shelby County.  On January 26, 2007, Ms. Robilio filed a "Motion to Remand this Case Back to the U.S. Bankruptcy Court for the Sixth Circuit, Appellate Panel" and a "Motion to Dismiss this Case, It is a Moot Case."  Among the various grievances listed in this motion was the assertion that NetBank never provided her notice of the foreclosure sale or a payoff statement to allow her to cure the default.  On February 5, 2007, the general sessions court entered an order granting possession to FNMA.  Ms. Robilio then filed her notice of appeal to the circuit court.

On June 20, 2007, FNMA filed a motion for summary judgment in circuit court and included with the motion three affidavits and a statement of undisputed material facts.  FNMA averred that it had acquired the property at a foreclosure sale and held record title; that no stay, injunction, or order was in effect at the time of the foreclosure sale; that, pursuant to Ms. Robilio's deed of trust, she was obligated to surrender possession of the property immediately; and that Ms. Robilio had refused to do so.

FNMA's notice to Ms. Robilio of the July 27 hearing date bore a postmark of July 16, 2007; Ms. Robilio contends she received the notice two days later and had only nine (9) days to prepare for the hearing.  Ms. Robilio responded to the motion on July 26, 2007, and the response was filed

---

[2]The record reflects that Ms. Robilio had made plan payments in the amount of approximately $6,860, but that she had ceased doing so thereafter.

by the clerk two days later. The response advanced various arguments, but the most pertinent involved NetBank's failure to provide notice.

On July 27, 2007, the trial court entered an order awarding summary judgment to FNMA. The order did not address Ms. Robilio's allegation of wrongful foreclosure, but it did note that "in responding to the Motion, Defendant has failed to comply with TRCP 56 and Local Rule 6. Defendant's response to the Motion was neither timely nor sufficient. It was filed two (2) days prior to the hearing and contained no counter-affidavit." Ms. Robilio then filed her notice of appeal on August 3, 2007.

### *Issues Presented*

As we understand it, the substance of Ms. Robilio's primary issue is whether the trial court erred by granting summary judgment in favor of FNMA where NetBank had failed to provide her a "statement of payoff" and notice of the foreclosure sale as required in the deed of trust.

FNMA, on the other hand, sets forth its three issues on appeal as follows:

1. Whether Defendant/Appellant received proper notice of the hearing on Plaintiff/Appellee's motion for summary judgment;

2. Whether the trial court addressed Defendant/Appellant's evidence; and

3. Whether the trial court properly granted Plaintiff/Appellee's motion for summary judgment.

### *Standard of Review*

Proceeding *pro se*, Ms. Robilio challenges the trial court's award of summary judgment to FNMA. We review an award of summary judgment *de novo*, affording no presumption of correctness to the conclusions of the trial court. *Guy v. Mut. of Omaha Ins. Co.*, 79 S.W.3d 528, 534 (Tenn. 2002). An award of summary judgment is appropriate if

> the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Tenn. R. Civ. P. 56.04.

When a party has submitted a properly supported motion for summary judgment, the burden shifts to the nonmoving party to establish the existence of disputed material facts. *McCarley v. West Quality Food Serv.*, 960 S.W.2d 585, 588 (Tenn. 1998). In determining whether to award summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party

and draw all reasonable inferences in that party's favor. *Staples v. CBL & Assocs.*, 15 S.W.3d 83, 89 (Tenn. 2000). The court should award summary judgment only when a reasonable person could reach only one conclusion based on the facts and the inferences drawn from those facts. *Id.* Summary judgment is not appropriate if there is any doubt about whether a genuine issue of material fact exists. *McCarley*, 960 S.W.2d at 588.

## *Analysis*

In this appeal, we consider an unlawful detainer action[3] brought against the maker of a deed of trust who, after her alleged default and a subsequent foreclosure sale, refused to surrender possession of the property. Unlawful detainer occurs "where the defendant enters by contract, either as tenant or as assignee of a tenant, . . . willfully and without force, holds over the possession from the landlord, or the assignee of the remainder or reversion." Tenn. Code Ann. § 29-18-104 (2000). Thus, a landlord/tenant relationship, established by contract, is the baseline requirement for maintaining an unlawful detainer action. If the trust deed establishes a landlord/tenant relationship between the mortgagor and foreclosure sale purchaser, then a constructive entry on the part of the purchaser attaches upon the passing of title; this constructive entry provides the basis for maintaining the unlawful detainer action. *Metro. Life Ins. Co. v. Moore*, 72 S.W.2d 1050, 1051 (Tenn. 1934); *Griffith v. Brackman*, 37 S.W. 273, 274 (Tenn. 1896). Under the facts of this unlawful detainer action, in order to prove its right to immediate possession, FNMA was required to show the following: (1) FNMA's (constructive) possession of the property and (2) its subsequent loss of possession by Ms. Robilio's act of unlawful detainer. *Accord Foster v. Hill*, 510 S.W.2d 520, 522 (Tenn. Ct. App.1973).

On appeal, Ms. Robilio asserts that NetBank failed to comply with the terms of the deed of trust when it conducted the foreclosure sale without first notifying her of the default, of her opportunity to cure, and of the sale itself. According to Ms. Robilio, this material issue of fact now compels the reversal of the trial court's award of summary judgment to FNMA. We agree.

### I. Factual Dispute

After reviewing the pleadings and other materials in the record, we conclude that Ms. Robilio sufficiently raised the factual question of pre-foreclosure notice and that FNMA failed to resolve it in its motion for summary judgment. The movant for summary judgment bears the burden of demonstrating that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. *Byrd v. Hall*, 847 S.W.2d 208, 211 (Tenn. 1993). Only after the movant has made such a demonstration does the burden shift to the nonmovant to show otherwise. *Byrd*, 847 S.W.2d at 215. Although FNMA focuses on the procedural shortcomings,

---

[3]Although FED proceedings are considered one type of action, the Tennessee Code identifies separate bases for the recovery of real property by summary proceeding: forcible entry and detainer, Tenn. Code Ann. § 29-18-102 (2000), forcible detainer, Tenn. Code Ann. § 29-18-103 (2000), and unlawful detainer, Tenn. Code Ann. § 29-18-104 (2000).

in time and form, of Ms. Robilio's response to its motion for summary judgment, it overlooks the fact that Ms. Robilio raised this very issue well before the summary judgment stage.

The record contains, first, FNMA's FED warrant obtained on January 3, 2007, in general sessions court. It next reveals Ms. Robilio's filing submitted on January 26, 2007, wherein she averred that the plaintiff never notified her of the sale and never provided a payoff statement. She stated that "the plaintiff didn't do any of these . . . . therefore, there hasn't been a sale and the detainer warrant is moot." In considering Ms. Robilio's filings, we remain mindful that

> [p]ro se litigants should not be permitted to shift the burden of the litigation to the courts or to their adversaries. They are, however, entitled to at least the same liberality of construction of their pleadings that Tenn. R. Civ. P. 7, 8.05, and 8.06 provide to other litigants. . . . Even though the courts cannot create claims or defenses for pro se litigants where none exist, . . . they should give effect to the substance, rather than the form or terminology, of a pro se litigant's papers.

*MBNA Am. Bank, N.A. v. Baker*, No. M2004-02239-COA-R3-CV, 2007 WL 3443600, at \*3 (Tenn. Ct. App. Nov. 15, 2007) (*no perm. app. filed*) (citations omitted). Construed liberally, Ms. Robilio's filing styled "motion to remand" and "motion to dismiss" is more in the nature of an answer setting forth defenses and incorporating a motion to dismiss the action. In our view, Ms. Robilio unmistakably advanced wrongful foreclosure as a defense in her answer.

The only other relevant filings in the record are FNMA's motion for summary judgment, three affidavits, and a statement of undisputed facts, all of which are silent on the issue of NetBank's pre-foreclosure communications with Ms. Robilio. Indeed, FNMA never averred that NetBank met the notice requirements; instead, it merely stated that "[a]s a result of Robilio's payment defaults to NetBank, NetBank scheduled a foreclosure sale of the Property for March 3, 2006." Because FNMA never addressed the factual issue of proper notice in its summary judgment filings, the burden never shifted to Ms. Robilio so as to require her to pursue the point further. Even though her belated and technically insufficient response to FNMA's motion further developed these allegations, this filing is immaterial to the outcome on appeal because FNMA failed to meet its initial burden.

## II. Materiality

To preclude an award of summary judgment, a factual dispute must also be material to the outcome of the motion or case. *Byrd*, 847 S.W.2d at 214. If the outcome of the subject claim or defense depends upon the resolution of the factual dispute, it is, without question, material. *See id.*

The question we must resolve is whether the issue of NetBank's pre-foreclosure communications (or lack thereof) with Ms. Robilio bears upon FNMA's right of possession. FED actions concern only the right to possession, *Newport Hous. Auth. v. Ballard*, 839 S.W.2d

86, 89 (Tenn. 1992), and in such proceedings, "[t]he estate, or merits of the title, shall not be inquired into." Tenn. Code Ann. § 29-18-119(c) (2000). Where title bears directly upon the right of possession, however, a party may legitimately interpose the issue. *Allison v. Casey*, 63 Tenn. 587 (Tenn. 1874) (allowing evidence of title as proof of right to control and rent out property); *Phillips v. Sampson*, 39 Tenn. 429 (Tenn. 1859); *Settle v. Settle*, 29 Tenn. 504 (Tenn. 1850); *CitiFinancial Mortgage Co., Inc. v. Beasley*, No. W2006-00386-COA-R3CV, 2007 WL 77289, at *6 (Tenn. Ct. App. Jan. 11, 2007) (*no perm. app. filed*) (stating that wrongful foreclosure can constitute a valid defense to an unlawful detainer action where the claimant's title, if bearing directly on the immediate right to possession, is questionable). In the unique situation of foreclosures conducted under a power of sale, the requisite landlord/tenant relationship may not arise when the trustee has exercised the power of sale in violation of the deed of trust. *CitiFinancial Mortgage Co.,* 2007 WL 77289, at *6. Thus, to determine whether this subsisting factual question vitiates the award of summary judgment, we first look to the terms of the deed of trust and then consider the effect of a wrongful foreclosure under such a document.

The deed of trust executed by Ms. Robilio provides, in pertinent part, as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless applicable law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Trustee shall give notice of sale by public advertisement in the county in which the Property is located for the time and in the manner provided by Applicable Law, and Lender or Trustee shall mail a copy of the notice of sale to Borrower in the manner provided in Section 15. Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and under the terms designated in the notice of sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty expressed or implied . . . . If the Property is sold pursuant to this Section 22, Borrower, or any person holding possession of the Property through Borrower, shall immediately surrender possession of the Property to the purchaser at the sale. If possession is not surrendered, Borrower or such person shall be a tenant at will of the purchaser and hereby agrees to pay the purchaser the reasonable rental value of the Property after sale.

According to these terms, the Lender may invoke the power of sale only after the expiration of the thirty (30) day curative period, which itself commences only after proper notice of default (with a "payoff statement") has been given to the Borrower. Moreover, only when the sale occurs "pursuant to . . . Section 22" and the Borrower refuses to surrender possession does a landlord/tenant relationship arise between the Borrower and foreclosure purchaser. Ms. Robilio has alleged that NetBank breached these terms, and FNMA has failed to address her allegation in its summary judgment filings. Still, we must also consider the ultimate effect of such a breach.

In general, Tennessee law has required the trustee's strict compliance with the advertisement and notice terms as provided in the deed of trust. *See, e.g., Henderson v. Galloway*, 27 Tenn. 692, 695-96 (Tenn. 1848). The consequences of a foreclosing trustee's failure to comply with foreclosure terms depend upon the source of the requirements. Specifically, if the terms are sufficiently clear and originate in the deed of trust, the law demands strict compliance for the conveyance to be valid. *Progressive Bldg. & Loan Ass'n v. McIntyre*, 89 S.W.2d 336, 336 (Tenn. 1936). In contrast, where a foreclosing trustee proceeds according to statutory requirements, the law in Tennessee is not so exacting. *See* Tenn. Code Ann. §§ 35-5-101–35-5-116 (2001 & Supp.2006) (addressing non-judicial sales pertaining to the foreclosure of deeds of trust). The failure of a trustee to comply with statutory requirements does not render the sale at foreclosure void or even voidable. *See* Tenn. Code Ann. § 35-5-106 (2001 & Supp. 2006) (sale without advertisement is not void); *Doty v. Fed. Land Bank of Louisville*, 89 S.W.2d 337 (Tenn. 1936); *Williams v. Williams*, 156 S.W.2d 363, 369 (Tenn. Ct. App. 1941).

But the parties can vary the terms of foreclosure by contract, and where a deed of trust provision varies from the statutory requirements, that term will generally supersede the statutory requirement. *See* Tenn. Code Ann. § 35-5-101(d) (2001 & Supp.2006)("Nothing in this section shall be construed as applying to any notice published in accordance with any contract entered into heretofore, and expressed in a mortgage, deed of trust or other legal instruments."); *McIntyre*, 89 S.W.2d at 336 (holding a foreclosure sale to be void, and purchaser's title invalid, where trustee sold property after twenty-two days of advertisement, rather than the twenty-eight days required by the deed of trust); *Potts v. Coffman*, 240 S.W. 783, 784 (Tenn. 1922). If the trustee breaches the controlling terms, the foreclosure sale may be set aside. *McIntyre*, 89 S.W.2d at 337; *In re: Kitts*, 274 B.R. 491, 494 (Bankr. E.D. Tenn. 2002) (setting aside a foreclosure sale in light of the trustee's violation of the deed of trust default notice provisions). When the purchaser at the foreclosure sale has drafted the deed of trust controlling the sale, and

where the deed of trust waives and conveys the makers' equity of redemption for the benefit of the purchaser, the instrument "must be strictly construed, and the terms thereof must be followed strictly by the trustee, in order to deprive the makers of their title by means of a sale thereunder." *McIntyre*, 89 S.W.2d at 336. For example, a trustee must comply with terms such as notice of time and place of sale, as well as personal notice of sale, if provided for in the deed of trust:

> When, by the terms of the deed, the trustee is required before making sale to give notice to the bargainor of the time and place of sale, the giving of such notice is in the nature of a condition precedent, and, if not complied with, the sale is unauthorized and void and will communicate no title to the purchaser. And if the requirement be that personal notice shall be given, the trustee cannot substitute notice by advertisement in a newspaper, or at some public place or places, because not within the scope of his authority and also because such a departure on the part of the trustee might be made to defeat the very object of the requirement by enabling him to sell the property without the knowledge of the party making the deed.

*Henderson v. Galloway*, 27 Tenn. 692, 695-96 (Tenn. 1848).

If true, NetBank's failure to provide notice of default of Ms. Robilio's opportunity to cure, and of the foreclosure sale, would be sufficient to prevent the passage of good title and, thus, the emergence of the landlord/tenant relationship. In the absence of this relationship, FNMA would not have been in constructive possession of the property so as to maintain an unlawful detainer action.[4]

Given the existence of a genuine issue of material fact, we conclude that the award of summary judgment was improper. Whether or not NetBank provided proper notice and whether it in fact foreclosed in violation of the trust deed, however, are matters for trial. We see no need to address the other issues raised on appeal, as they have been pretermitted.

### *Conclusion*

For the foregoing reasons, we reverse the judgment of the trial court and remand the

matter for further proceedings. Costs of this appeal are taxed to the Appellee, Federal National Mortgage Association, for which execution shall issue if necessary.

---

[4]In its filings and its appellate brief, FNMA refers to the bankruptcy court's order giving NetBank the authority to continue the foreclosure sale at a later date. That order is not in the record. Further, there is no indication that the bankruptcy court considered the issue of wrongful foreclosure. Finally, and most importantly, we see no connection between NetBank's obligations under the deed of trust and a bankruptcy case that commenced after NetBank had instituted foreclosure proceedings and that concluded, by dismissal, before the foreclosure sale itself.

_____

DAVID R. FARMER, JUDGE